Good morning. Once again, Your Honors. Again, my name is Russell Petty, and I'm representing the Plaintiff, David Hoffmann. In the last argument, I was trying to focus on the narrow issues, and in this case, I'm going to start off by talking about the big picture and what I believe was the fundamental failure of due process which occurred in... Now, in this case, we don't have any questions as to what the standard of review is, do we? Is it de novo in this case? The standard of review is de novo, and there isn't an issue about that, Your Honor. So the California statute is not at issue here? The California statute is not at issue. The commonality that exists between the two cases is the issue with respect to who bears the burden of proof on a mental nervous limitation. I'm going to be addressing that in a bit. But the primary thing is, as sort of was talked about earlier today, the ERISA cases are tried on a paper record. Plaintiffs sort of get a streamlined remedy that doesn't permit them to introduce evidence in most cases once the matter is in litigation. And for the most part, that works reasonably well until you have a situation where one side or the other is gaming the system. In cases like that, what you can get is you can get a violation of the client's essential rights, and I think that that's what happened here. And in order to establish that, I'd like to focus on a single point. And that's the point which was important to the district court, that Mr. Hoffman's diagnosis for bipolar was that the hypomanic episodes, which are necessary for a diagnosis of bipolar, might have been caused by his antidepressant medication. Now, I thought the district court had a very different concern. I thought that when he consulted the DSM that the DSM was quite specific that a hypomanic episode had to occur over a period of four days, and that there wasn't anything in the record that suggested any four-day period in which he'd had those kinds of episodes. I mean, that was also part of his concern. But there's no question about the fact that part of his concern, and that's in the record at ER 12, that part of the district court's concern was the fact that the diagnosis is suspect because the hypomanic episodes might have been caused by the antidepressants, which came from the DSM-IV. Now, there was no discussion. I'd like to focus on that point because that's the clearest case of there being absolutely no discussion in the record. None of the experts in the record were ever asked, and let me just sort of... The question about the hypomanic episode seemed to me to be the most important point for the court. And what was concerning to the district court was that there wasn't any documented evidence of hypomania. And in all of the discussion between Ms. Lehrman and Dr. Kohut, and the other doctors that were reviewing this on the side of the insurance company, is that nobody ever identified a period in which he'd had that hypomanic episode. People referred to various things that were on the list of what might have identified a hypomanic episode, but nobody ever said, here's the four-day period. It occurred in September of, you know, make up a year. And that's where he had the hypomanic episode that does that. I don't see it in Dr. Lewis. I don't see it in Ms. Lehrman. I don't see it in Dr. Kohut. And the district court, I think, was concerned that nobody had ever tried to identify it. And what's surprising to me, counsel, is that with all this back and forth between the doctors, and a little bit of name-calling and credential-challenging going on between the doctors, that nobody ever thought to go back and try and do this one more time. Well, first off, Your Honor, to get to my initial point, it says in the record at 12 o'clock that the district judge walks down a list of the criteria in the DSM-IV for proving, you know, establishing bipolar, and then concludes by saying, the lack of analysis of criterion F is especially notable, as Planoff was taking a variety of psychotropic medication and had complications from his diabetes to other possible causes for his behavior. So the judge clearly thinks it's significant. Not the only thing he thought was significant, but I'm focusing on that because it's the clearest case. I could just as easily say that, look, at no point, at no point were the treating physician said, well, tell us the period over which these hypomanic episodes occurred. But we know they weren't asked, explain why it isn't a factor that, you know, perhaps the hypomanic episodes were being masked by the drugs. And here's why that's important, okay? You know, people bring up new issues in trial all the time. And if it's a bench trial with witnesses or a jury trial, it's not that much of a problem. I want to make one more run at you, okay? I think maybe this is the third time I've said it, and I think maybe we're not communicating here. It seems to me that the pages and pages and pages that the district court spends discussing this are focused on whether there was evidence of a four-day period of hypomania to satisfy DSM-IV. I see what you say. I see what you are pointing to. It's in the very, very last paragraph before the conclusion where the district court also says, well, we also need to know that the symptoms of hypomania were not caused by the psychological drugs that he was taking. That looks like an afterthought to me. So the biggest concern for me, and I'm telling you, this is my biggest concern. If you want to win me over today, this is where you ought to focus your attention with me. If you only want to focus on Judge Walter and Judge Kaczynski, you can talk about whatever you want. But for me, the biggest problem is the four-day hypomania episode. Where's the evidence for that? And my issue, Your Honor, is not whether there's evidence for that, although I think that Ms. Lerman does provide, you know, evidence of hypomanic episodes, although she doesn't provide a timeline over which they occurred. But the key issue here, Your Honor, is we were never put on notice that this was an issue until such time as we're in litigation, and it's too late to present a bit of evidence of that. My point is, is that if we'd known about this at a trial, and it was a bench trial, and there were real witnesses, we could have asked. Did you have the letters from the various evaluators? We had all the letters from the various evaluators, Your Honor. None of them, none of them get into detail like that. Yeah, but counsel, this is the crux of the criticism from the evaluators was we don't have evidence of a hypomanic episode. And Dr. Lewis came back and said, I think you're wrong on that, and here's why you're wrong. There's plenty of evidence here that is consistent with hypomanic symptoms. She's probably correct on that, but she can't identify anything in the record, in the medical record she's reviewing, in which anybody can actually find an episode. Your Honor, there are four file reviewers from Cigna. You've got three of them early in the case that really don't have all the evidence. Only one of them is a doctor, Dr. Greener. You've got Ms. Gist and Mr. Johnson. There's some discussion by the two what they call behavioral specialists. We don't know what sort of training, we don't even know if they're college graduates, but they talk very briefly about hypomanic episodes. The only doctor employed by Cigna who actually reviewed the entire file, including Ms. Lerman's letters that talk about the hypomanic episodes, is Dr. Acinas. Dr. Acinas, you could read her report, it never even mentions hypomanic episodes. The word hypomanic episode does not appear in her report. The only thing she talks about, her primary thrust of her report, is that Mr. Hoffman isn't disabled, which at this point even Cigna concedes that he's disabled. So basically they've thrown out half of her opinion. I submit that what happened at trial is counsel recognized that hey, this opinion by Dr. Acinas isn't any good, we've got to make some new opinions. They put the DSM-IV before the district court and raised a whole bunch of new points which had never been asked. Nobody ever asked. Nobody ever asked Dr. Acinas about the time period you need to have hypomanic episodes. Certainly nobody asked Dr. Lewis or Dr. Cohart or Ms. Lerman any of those questions back when the record was being created because these issues were not raised by Cigna. Then all of a sudden in litigation they're being raised and now we haven't got an opportunity to put witnesses on the stand to testify about this and that's the frustrating thing about it. Ms. Lerman didn't say one way or another the period over which she observed these hypomanic episodes because in spite of the fact that she was questioned repeatedly by various Dr. Acinas and various other Cigna employees or agents, she was never asked that question. I mean I submit that having that being an issue raised and having the district court concerned about it. How did the DSM-IV get into the record? It was put into the record. The district judge was asked to take judicial notice of it by the court. It was judicial notice? Judicial notice, yes, Your Honor. So you can supplement the record with judicial notice. I just don't know enough about this case of what happens at the district court. You do have the letter from Carrie Decker, the disability claim manager, in which she specifically says there's no documented episode of hypomania in the medical review. But she's not a medical expert. But if we're talking about that you didn't have notice that the question of the hypomanic episode was not at issue, that would seem to put it at issue, wouldn't it? Well we did and Ms. Lerman provided great detail about hypomanic episodes that she observed and then once in litigation we got, well wait a minute, we've got to know over what time period. What we got from Ms. Lerman was mostly a conclusion that we had bipolar II and some evidence that there were some symptoms that would qualify for a hypomanic episode. In other words, hypomanic episode has a whole bunch of symptoms and you have to have so many symptoms over a four day period. Nobody ever identified the period. And so it's possible to have symptoms of bipolar II without having bipolar II. Your Honor, I could promise that you could look at the record all you want. You're never going to find anybody back when the claim was being handled of saying, well wait a minute, we've got to prove these hypomanic episodes occurred over a four day period. That simply wasn't raised. That wasn't raised until litigation. With respect to the court's question about judicial notice, judicial notice of the DSM is for. I've asked courts to take judicial notice of the DM for, but to do things like explain what a medical term means. Not to essentially ask the court to act as its own expert by putting a diagnostic criteria of a medical condition before the district judge and saying, here judge, why don't you decide whether these conditions are valid. He's not going to diagnose them, but he is going to look at the records. And when we ask for de novo review, which is what you're asking for from the last case, right? When you start asking for de novo review, this is what you're going to get. The district court is going to have to look at the DSM himself. Well, no, Your Honor. I mean, perhaps. But the point of the matter is that you could look at the DSM for maybe to evaluate the persuasiveness of expert testimony. But the fact of the matter is there is no expert testimony on, for example, the frequency over which the hypomanic episodes have to occur in order to be a valid diagnosis. This is something where you get two lawyers. Once we get the district court asked to take a de novo review of this, and he can pull out the DSM, and he will read it. And he will read it as a lawyer and not as a doctor. That meant that he was reading it, you know, very technically, sort of like we read a statute. And when he says, look, you don't satisfy the hypomanic episode, then the question of the burden of proof is critical. And the question of who had the obligation to prove that there either was or wasn't a hypomanic episode is critical. And the district court said the burden of proving the hypomanic episode in order to qualify for bipolar II was your burden, and you didn't satisfy your burden. But, by the way, before I move on to that, and that's a good point, Your Honor, that I should move on, the DSM for itself says this is not a document to be used by laypeople. This is for practitioners and people that are experts. Roberts. You're the one who's arguing for de novo review. What's the district court supposed to do? Well, the district court is supposed to do like Judge Wilson did in the Walker case. If he's got this question, he's going to say, look, I'm going to refer this out to an expert. He has the power to do that. And, frankly, that's what he should have done here or remanded it back to the insurance company and says, look, I can't decide this case in the absence of these factors. Go do some more explanation. But what the district court is not supposed to do is drag out the DSM for and sort of decide issues which are properly the subject of expert testimony in the first instance. And that's exactly what took place here. Burden of proof, I think the district judge respectfully got that wrong. I think we all agree insurance company, excuse me, the insured has got the burden of showing the scope of coverage. The insurance company has got the burden of showing an exclusion or limitation from coverage in order to decide those two. I think we all agree that you have to look at the policy itself. That would mean the insurance company would have to show that there was mental illness. The insurance company. You're not going to dispute that. What you're going to say is that the mental illness is bipolar two, which is an exception to the exclusion. The insurance company would have to show that bipolar two does not apply. Well, help me with the plan. As I understand the plan says you get 24 months of coverage, uh, and you can get more if it's not one of these conditions, alcoholism, maybe they have a list. Why isn't that your burden to show that, that you go beyond the 24 months? Uh, I mean, they, they gave the 20, they gave the client 24 months, right? And now why is it up to you to show I have a condition. I have a condition that does not fall in one of these exceptions. Well, it determines on the structure of the policy. And let me give the court an example. The, I'm sorry, it depends on the structure of the policy. And let me give you an example. Did I get it wrong as to how this policy is structured? The, um, I thought I, I thought I saw it. Yeah. If you look at the 24 month own occupation provision policy gives, you know, uh, first 24 months, any occupation, own occupation coverage beyond that, any and it subsumes the own occupation, any occupation. And so as a result, because that, that definition is written into the coverage provision, we accept that if we have to establish that Mr. Hoffman is disabled from any occupation after 24 months, that we bear the burden of proof with respect to that, because it's a coverage provision, but the 24 month exclusions for alcohol and mental illness and, you know, one or two other things, those are not, not, not, it's subsumed when the coverage provision, those are in a separate portion of the policy. And because of that, I think the case law is clear that it's an exclusion and limitation upon which Cigna bears the burden of proof, your honor. And it all turns on, on, on sort of. And so Cigna would have to prove what? Cigna would have to prove that the, um, that, that it's not bipolar. It's not bipolar. That's correct. Your honor. Cigna would have to prove that it's not bipolar and couldn't do this because I mean, if you, if you look at, you know, even Dr, uh, uh, Sinus, I mean, the most she can say, nobody says Mr. Hoffman isn't bipolar from the, you know, from the insurance company side of the world, the best I ever come to is say, well, we don't think it's supported. I mean, his treating physicians think he's got bipolar. They're giving him medication for bipolar. I have no doubt in my mind. If we got Dr. Kohut on the stand, he'd be able to give a convincing explanation of why it is. He believes this is a proper diagnosis. We were never given that opportunity to do so because of the limited, uh, ability to introduce additional evidence. And the fact that these were new issues that were raised, I mean, you know, your opinion, you said there's supposed to be a dialogue, uh, there was no dialogue here. And because there was no dialogue, we have an insufficient record. And because we were never put on notice that we needed to provide this information, we're in a situation where an issue was raised and we never had an opportunity to, uh, to address it. I see I'm, I'm way over time. So, uh, if anybody has any questions, I'd be happy to answer them. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the court. My name is Dan McGuire for the appellees. There are two issues presented today. The first has to do with the burden of proof and whether or not the district court erred in determining that Mr. Hoffman bore the burden that he was entitled to benefits after the expiration of the two-year mental illness provision. Second, whether the district court committed clear error in finding Linus' determination that Hoffman was not entitled to benefits thereafter was correct. I would like to first turn to the burden of proof. A disability insurance policy is an installment contract. The insured has the burden of proof to satisfy the test of disability for each monthly benefit period. Now the test may change over the course of the policy, but the burden does not. For the first two years, if the insured is able to demonstrate that he or she is unable to perform the duties of his own occupation by reason of a mental illness, he or she would be entitled to benefits. But after that, he or she must demonstrate that they're totally disabled by reason of a physical condition. The burden of proof does not shift to the insurer to establish proof of loss after the expiration of the mental illness provision. It's the same situation with the change in definition from own occupation to any occupation. For the first two years, the insured can satisfy the definition of disability only if he or she is unable to perform the duties of their own occupation. But thereafter, they must satisfy the test of any occupation by which they're reasonably suited by education, training, and experience. A time limitation, such as the mental illness limitation, is not an exclusion. It's a coverage provision. Consider a situation that's even more simple, a maximum benefit period. What's an exclusion then in your view of things? What would be an exclusion? Something like that prevents the benefits from being paid at all in the first place. Listed under the policy exclusions. You know, this is so vague. Why don't you give me an example? Sure. I mean, you can make up an example. I would just like to understand, you know, you say there are these exclusions and there are coverage provisions. I'm just not sure I understand what the universe of exclusions looks like. If an exclusion, for example, from our policy is a self-inflicted injury. So, for example, if the insured was working in his wood shop and he decided to cut off his left arm with a circular saw, that would be a self-inflicted injury. It would be excluded from coverage, even though he may not be able to work because of that injury. I'm sorry, and the insurance company has to, I'm sorry, the insurance company, who has the burden of proof from proving that that was self-inflicted? The insurer would have that burden. So, he comes in and says, I don't have a left arm, I can't do the work. And the insurer says, oh, but you caused the injury yourself. Correct, Your Honor. Why is that different? And how is that different from saying, look, I am unable to work. And why does the insurer say, oh, but the reason you're not able to work is it's because of alcoholism. That's subject to the two-year limitation. It's not an exclusion. Well, you say it's not an exclusion, but I'm not sure how it's any different than the thing that you say is an exclusion, which is, how are they, what's different about them? What, how would you explain the generic difference? It's a limitation on coverage, so there's coverage for a specific set person. It's equally a limitation on coverage, saying if you cut off your left arm, you don't get, you don't get anything. In that case, Your Honor, there's no coverage. Okay, so let me change the hypothetical for you. You can definitely say, Your Honor, you know, for one year, you get coverage no matter what, but if it's a self-inflicted injury, after a year, the coverage stops. That's, that's not an exclusion anymore? No, if it's in the exclusion provision, like the self-inflicted injury, yes, it is. So we have to look at where it is in the policy. Well, all right, so now, now we have removed the distinction that you offer than this, oh, it's a complete exclusion from the beginning. Let's say it's exactly like this. Let's say one of the things that they list there is alcoholism, mental illness, and so on, self-inflicted injury. Let's say they had listed that as one other thing that stops coverage at two years, at 24 months. Okay. So your position would be the self-inflicted thing would be the insurance company's burden, but everything else would be the, the, the, the applicant's burden? Well, in that case, Your Honor, in your hypothetical. Why don't you say yes or no, and then you can, you can, you can explain all you want. Because your, your position is that the, the cutting off the arm is the insurance company's burden and everything else is, I mean, just say yes or no. I mean, you know, I, I, okay, explain. The reason is because it's an insurance provision. That's part of the scope of coverage as Your Honor has placed the hypothetical. So I'm sorry. So, so at this point it becomes his burden after two years. Yes. He would have to show that any further disability. Now you've got me completely confused. So if in the beginning they say you don't get any money at all for self-inflicted injury, then that's exclusion. But if they do it after two years, it's a coverage provision. Yes. To the extent, as far as that goes, so I take it, your answer is the same if you have an exclusion altogether for alcoholism. So if they say you get covered for everything, but not for alcoholism, it would be the insurance company that would have the burden of proving alcoholism or mental illness. Yes. If it's listed as an exclusion. I'm sorry. So this is all a question of how it's listed in the policy. If you guys decide to call an exclusion an exclusion, if you decide to call it something else, then it's a, then it's a coverage provision. There's coverage provisions and exclusions. Yes. Is the answer. So the answer is, I mean, that's a perfectly, you know, logical, understandable answer. I'm not sure it's a satisfactory answer, but basically your position is, the plan gets to decide what's an exclusion and what is a coverage provision. If they say it's an exclusion, it's an exclusion. If they say it's, it's not, it has nothing to do with two years out or what kind of illness, whatever they call it, it is. That's your position? Yes, Your Honor. Okay. And they're the drafter of the policy. And for these reasons, the laws of interpretation interpret the policies against the drafter, you know, if there's an ambiguity, but if you have a situation here where the limitation on the mental illness provision is part of the coverage provision, it doesn't change the burden of proof. There's no shifting burden of proof. I see. So if you phrase the cutting of the arm as a, as a coverage provision, then your answer would change, right? If it says you get covered for all things, but not cutting off your left arm, then that would be a coverage issue and the applicant would have the burden. No, because the way Your Honor phrased that question, it was an exclusion. You said you get coverage for everything except if you cut off your arm. And so that's an exclusion. I'm sorry. So if you get coverage for everything except mental illness. Then mental illness in that hypothetical. I'm going to say unless it's mental illness. I'm sorry, Your Honor. For everything, not including mental illness. Mental illness could be an exclusion. Absolutely. It's not in this case, but it could be. Well, if the, if, if the, if the applicant comes in and says, I'm disabled, and you, and you look at him and say, yeah, there's no question that you're disabled, then who has the burden of showing that, that it's mental illness? The insured would have the initial burden of showing that they're disabled from some condition that's recognized as a disabling condition and results in a loss of functionality. Well, if they're, but if they're just, I mean, if they're, if they, if they can provide evidence that they are disabled, then don't, do we have to know the cause? Not in the first two years, we don't. Okay. And after that? Then we do. In this case, because the mental illness limitation precludes any pain. And your view is that that's still his burden. That's not the insurance company's burden to come back and say, we recognize that you're disabled, but we can only cover you for two years because your disability is, is the result of mental illness or alcoholism or something else. Your Honor, the burden is on the, the insured to show disability after the two years, which requires a non-mental illness condition. In other words, a physical condition. Two years is your, that's, that's your limitation. That's, that's not a, that's not a limitation that applies to disability generally. No, we have to go by the terms of the contract that we're dealing with. That's correct. Some policies have no limitations for mental illness. You're just saying you've got coverage for the two years. No problem. We're not going to contest, but after two years, you got to show that, that we're, that we're covering you. Correct. That's correct, Your Honor. And under the policy language, the only way that happens is if it's a physical illness, which bipolar qualifies for, and that's why the whole analysis was undertaken. And so what are we supposed to do with the DSM? The second issue then, Your Honor, whether the claim is subject to the mental illness limitation at all, it's, it's undisputed that bipolar two is not subject to the mental illness limitation. The company told Mr. Hoffman that nobody takes a different position. So if the bipolar is supported and prevents him from working in at that point, any occupation, benefits are payable. But here, Mr. Hoffman's diagnosis of bipolar was not supported. Okay. Let, let me turn to, to Mr. Petty's argument that, that he was, that he was never advised that the four day hypomanic episode was, was at issue here, that that was a litigation, that was a litigation argument and not an insurance argument. I would ask, I would refer the court or invite the court's attention to excerpt page 266 on that issue. Okay. And what is that? This is a letter dated August 15, 2011, addressed to Mr. Hoffman by Lina. And what I'm looking at is the letter signed by? Cary Decker, disability claim manager. Okay. So this is page two you're looking at? Yes, Your Honor. Okay. The letter starts on page 265. Yes, Your Honor. So this is from Cigna, Cary Decker to Mr. Hoffman, okay? Correct. So here we notify Mr. Hoffman in the first full paragraph of that page, starting on the second line. There is no documented episode of hypomania. I'm sorry. Oh, the second line, second sentence, third sentence. Okay. I'm sorry. Go ahead. I will go ahead. There is no documented episode of hypomania in the medical reviewed, which is required by the criteria of the DSM-IV for diagnosis of bipolar two. And as long as we're on that sentence, Your Honor, I would like to continue to the next. Therefore, the medical on file does not support benefits beyond the policy's mental illness limitation of 24 monthly benefits. So that's the notification to Mr. Hoffman directly that in order to qualify for benefits after the 24 months, he's going to have to show that he's got a physical. It does seem a little strange that Dr. Asanis doesn't refer at all to the hypomanic episode. She doesn't refer to the hypomanic in those words, but she says manic. So I don't know what the distinction is between hypomanic and manic. I read the DSM as a layman myself. I'm not sure it's a significant distinction, but she definitely... But she didn't refer to the four day period. I mean, she just refers in very general terms to sort of saying, well, I don't think that this qualifies. And then they have this back and forth between Dr. Lewis and Dr. Asanis as to whether they're dealing squarely with each other. That's correct. And Dr. Lewis was more or less of a forensic reviewer, so she didn't actually see Mr. Hoffman. She commented on the records. But Mr. Hoffman's treating physician, or I'm sorry, not physician, his therapist, Ms. Lehrman, who had treated him for years, had made an attempt to justify or explain why he met the hypomanic and the district court spent a lot of time... There doesn't seem to be any dispute that he had symptoms that would have qualified as for a diagnosis of a hypomanic episode. In other words, they identified things like, you know, the brain racing and lack of sleep and so on that would have been consistent with. And that's the phrase that Dr. Lewis keeps referring to. She keeps saying, well, this is consistent with this diagnosis, but she can't justify, and neither does anybody else, a four-day period. And the DSM specifies a four-day period. I don't know whether, how seriously we're supposed to take that four-day period. Maybe the doctors don't take it seriously. I mean, maybe, maybe bipolar two gets diagnosed all the time without anybody ever really following that. They're not reading the DSM like, like we would read a legal code. It's not like the CFR or something. But there's diagnostic criteria, Your Honor, and consistent with doesn't mean satisfying the diagnostic criteria. These are very specific items in the DSM. It's, it goes on for a page. And we would submit that those have to be satisfied in order to arrive at a proper diagnosis. Your Honor, my time is about to expire, but I'd like to invite any last questions by the court. I mean, there's no one that focuses on the absence of a four-day period, other than this court, right? That's true. There's in the administrative record, we don't have a discussion of the four-day period. We only have a discussion of the DSM-IV. And there's discussion of symptoms that would, as Judge Barbee said, consistent with, with a manic or hypomanic episode, right? That could be consistent with, yes, Your Honor. However, the experts on the other side say that doesn't satisfy the diagnostic criteria. So, I mean, the district court weighed the evidence and came to the conclusion that it did. And we believe that the district court was absolutely correct in its ruling. And we asked the court to sustain. But the district court focused on this four-day period that nobody else focused on. Correct. And the district court entitled to do that? Sure. Because the reason is we're asking the court to conduct a de novo review. We're giving the court the criteria on which to conduct that review, the DSM-IV. The DSM-IV has diagnostic criteria that are specific. The court's obligation then is to apply the facts to that diagnostic criteria to see if it's satisfied. And your, your burden of proof here becomes critical because if you have the burden of showing that he doesn't have a bipolar II, you're going to have a very difficult time doing that. If he's got the burden of showing that he's got bipolar II, then, then the district court may conclude he may well have bipolar II, not on this record. I can't cross that bridge with you, Your Honor, because I don't think that the result of the district court would be any different under either standard of review. Wouldn't, I mean, no matter who has the burden of proof. And the reason is because the evidence just isn't there. It's not a question of, we didn't get the evidence we needed. We got everything that we asked for. It just didn't support the diagnosis. Okay. Thank you. Thank you, Your Honors. We'll make it a minute. How about that? Thank you, Your Honor. That was very kind. Two points, with respect to the burden of proof, the, you know, the sort of distinction that, well, you know, it's an exclusion if no benefits are payable, but once benefits are payable for a couple of days, then all of a sudden it turns into a limitation and limitations the insured continues to bear the burden of proof. That's just not the case law. I would refer the court to the Ghent case out of the first circuit, which is cited in my papers, where they actually discuss the 24 month mental nervous decision. And the first circuit eventually decided it didn't need to read the issue, but it does say that the facially, the mental nervous limitation might appear to operate much like an exclusion. So I submit that it all boils down to whether it's a coverage provision or whether it's someplace other than a coverage provision, and you have to look at the policy for that. And in this case, I think the analysis we've performed is that it's not a coverage. And if it's coverage, it's your burden. If it's covered, if it's in the coverage section of the policy, then it's our burden, that's correct, Your Honor. If it's someplace else, then it's something the insurance company has to prove. The, with respect to the four days, I mean, Judge Feige, you're exactly right. I mean, the, this is something that was invented by the lawyers after the case went to litigation. Well, the DSM was invented by the doctors. And the problem is, counsel, is that now you've, I mean, you know, California's in transition, and as you know, from the prior case, we're, we're, they're, they're trying to move away from district courts giving discretion to insurance companies and doctors who decide these things to inviting the district court to decide them. And if we want the district court to do it, the district court is, is, is trained as a lawyer. He wants to know what the law is. And so he's, he's looking to the DSM and, and, and giving it and giving it legal status here. Well, but it shouldn't have legal status. And as I put it, DSM itself says. Is it binding or is it not? It's not binding. It's, it's something which is to be interpreted. It's just a guideline. It's something to be interpreted. It's a document says that itself, your honor. It's to be, how can we possibly have doctors talking to each other about whether they've got a correct diagnosis if they don't have common ground? That's what the, that's what I thought DSM four provided them was common ground for diagnosis. Well, it does, but the document itself says it's not supposed to be applied formulaically and as the court itself said, maybe this is something that in the practice, sort of like the local rules of the central district, there's some things in there that you have to comply with and some things that you don't. We don't usually go around saying, it'd be nice if you could file this document in four days, but if you don't get around to it, that would be okay as well. But when you put a four day period on something on a hypomanic and say, you've got to have, you have to have four of the following seven criteria or three of the following nine or whatever it is in a four day period, that starts looking pretty specific. Your Honor, the fundamental unfairness, the fundamental unfairness here is that I could have cleared this up easily if we were allowed a bench trial and Dr. Kohut or Ms. Lerman was on the stand and I can ask, what was the period over which no one ever asked that question? Nobody during the administrative process at trial, nobody ever, as case was decided on issues that we were never given an opportunity to present evidence. We never had notice that this four day period was an issue. I'm sorry, Your Honor. No, I've, I've overstayed my welcome and I appreciate the time and being able to run. No further questions and I'll submit, Your Honor. Thank you. Okay. So sorry. We'll stand.
judges: Kozinski, Bybee, Walter